

OCT 17 2025
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT CALIFORNIA

RONALD MARROQUIN LIMA, A-098568753
Mesa Verde ICE Processing Facility
425 Golden State Ave.
Bakersfield, CA 93301

Petitioner,

v.

MINGA WOFFORD, Administrator Mesa Verde ICE Processing Center; SERGIO ALBARRAN, Field Office Director of the San Francisco Immigration And Customs Enforcement Office; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, United States Attorney General,

Respondents.

Case No.: 1:25-CV-01390-SKO (HC)

**PETITION FOR WRIT OF HABEAS CORPUS**

RECEIVED
OCT 17 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

**INTRODUCTION**

1. Petitioner Ronald Marroquin Lima is in the physical custody of the Respondents at the Mesa Verde ICE Processing Center. He faces unlawful detention because the Department of Homeland Security ("DHS") and the Executive Office of Immigration Review ("EOIR") have concluded Petitioner is subject to mandatory detention.

2. Petitioner is charged with, *inter alia*, having entered the United States without admission or inspection.

3. Based on this allegation, DHS denied Petitioner's request for release from immigration custody in an order dated August 19, 2025, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

4. Similarly, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. See Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

6. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

7. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within seven days.

**JURISDICTION**

8. Petitioner is in the physical custody of Respondents. Petitioner is detained at the Mesa Verde ICE Processing Center.

9. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

10. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

11. Venue lies in the United States District Court for the Eastern District of California, the judicial district in which the Petitioner is currently detained.

**PARTIES**

12. Petitioner is alleged to be a citizen of Guatemala who has been in immigration detention since August 5, 2025.

13. Respondent Minga Wofford, is the Administrator of the Mesa Verde ICE Processing Center. As such, she is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. She is named in his official capacity.

14. Respondent Sergio Albarran is the Field Office Director of the San Francisco Immigration And Customs Enforcement Office. As such, he is the Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

15. Respondent Kristi Noem is the Secretary of the Department of the Homeland Security. She is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, which is responsible for the Petitioner's detention. Ms. Noem has ultimate custodial authority and is being named in her official capacity.

16. Respondent Pamela Bondi is the Attorney General of the United States. She is

responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. She is sued in her official capacity.

**LEGAL FRAMEWORK**

17. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

18. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, see 8 U.S.C. § 1226(c).

19. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

20. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, see 8 U.S.C. § 1231(a)–(b).

21. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

22. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

23. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

24. Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

25. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

26. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

27. On September 5, 2025, the BIA adopted this same position in a published decision, Matter of Yajure Hurtado. There, the Board held that all noncitizens who entered the

United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

28. Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected Matter of Yajure Hurtado, which adopts the same reading of the statute as ICE.

29. Subsequently, court after court, including this District, has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. See Lepe v. Andrews, No. 1:25-CV-01163-KES, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); See, e.g., Gomes v. Hyde, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); Diaz Martinez v. Hyde, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); Rosado v. Figueroa, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Lopez Benitez v. Francis, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Maldonado v. Olson, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Arrazola-Gonzalez v. Noem, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Romero v. Hyde, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Samb v. Joyce, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); Leal-Hernandez v. Noem, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Kostak v. Trump, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Jose J.O.E. v. Bondi, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) Lopez-Campos v. Raycraft, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29,

2025); Vasquez Garcia v. Noem, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Zaragoza Mosqueda v. Noem, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D.Cal. Sept. 8, 2025); Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425 (E.D.Mich. Sept. 9, 2025); Sampiao v. Hyde, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); see also, e.g., Palma Perez v. Berg, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); Jacinto v. Trump, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); Anicasio v. Kramer, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

30. Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. The plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

31. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

32. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the Rodriguez Vazquez court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." Rodriguez Vazquez, 779 F. Supp. 3d at 1257 (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010)); see also Gomes, 2025 WL 1869299, at *7.

33. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

34. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[ [noncitizen] seeking to enter the country is admissible." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).

35. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

**FACTS**

36. Petitioner entered the United States on or about July 2004 when he was seventeen years old without inspection or admission.

37. The Department of Homeland Security  Petitioner filed an I-589 seeking asylum, withholding of removal and protection under the regulations implementing the Convention Against Torture.

38. On April 13, 2016, before the applications were adjudicated, Immigration Judge Frederic Leeds administratively closed Petitioner's proceedings.

39. On May 15, 2025 DHS moved to recalendar the administratively closed proceedings. To date, the matter has not been placed back on the court's calendar.

40. Nonetheless, Petitioner was taken into custody on August 5, 2025 near Buffalo, New York and detained at Batavia Federal Detention Center. On August 12, 2025, Petitioner filed a custody redetermination request. On August 19, 2025, an Immigration Judge denied the request finding that the Court lacked jurisdiction over the request.

41. On September 11, 2025, Petitioner was transferred to the Mesa Verde ICE Processing Center where he remains today. Petitioner remains without a hearing date in immigration court.

42. Pursuant to DHS's policy dating back to July 8, 2025, and Matter of Yajure Hurtado, the immigration judge was and is unable to consider the bond redetermination request. As a result, Petitioner remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from his family and community.

**CLAIMS FOR RELIEF**

COUNT I
Violation of the INA

43. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

44. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

45. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

COUNT II
Violation of the Bond Regulations

46. Petitioner incorporates by reference the allegations of fact set forth in preceding paragraphs.

47. In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

48. Nonetheless, pursuant to Matter of Yajure Hurtado, EOIR has a policy and practice of applying § 1225(b)(2) to individuals like Petitioner.

49. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

COUNT III
Violation of Due Process

50. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

51. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody,

detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

52. Petitioner has a fundamental interest in liberty and being free from official restraint.

53. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Order that Petitioner shall not be transferred outside the Eastern District of California while this habeas petition is pending;

c. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

d. Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner or, in the alternative, provide him with a bond hearing pursuant to 8 USC § 1226(a) within seven days;

e. Declare that Petitioner's detention is unlawful;

f. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

g. Grant any other and further relief that this Court deems just and proper.

Dated: October 8, 2025

Respectfully Submitted,

Ronald Marroquin Lima